The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. You may be seated. Good morning, Your Honors. May it please the Court. In this case, plaintiff seeks civil damages from the Baltimore City State's Attorney for her decision to charge them with crimes. Like any prosecutor, the State's Attorney facially enjoys absolute immunity from such claims. But here the District Court found otherwise. It concluded that when faced with such claims, the State's Attorney's absolute immunity somehow dissolves, merely because, one, the decision was preceded by an investigation by the State's Attorney's office, or two, she and her office consulted with a fellow law enforcement agency when they decided to initiate the charges. Prosecutors' protective cloak of absolute immunity is not so easily removed. Now, in the functional analysis, the Court focuses on the conduct that serves as the basis for the constitutional violation. As it relates to the investigation in this case, plaintiffs do not assert any particular investigative act that violated their rights. They just complain generally that an investigation preceded the charging. But an investigation... Let me get the facts straight here. The investigation was undertaken by the Police Integrity Unit, wasn't it? That's correct. And the Police Integrity Unit is located, though, in the State's Attorney's office. That's correct, Your Honor. But, as I understand it, the reason that it's located in the State Attorney's office is that you want some kind of an independent investigation of police misconduct. You don't want the police investigating themselves. That's my understanding, correct, Your Honor, yes. And that's why, to the extent that the prosecutor was involved in the investigation, I'm just trying to make sure I understand. The reason that the prosecutor was involved in the investigation traces to the SAO, and the SAO's whole purpose is to conduct an independent investigation into police misconduct so that the police won't be sitting in judgment upon their own behavior. Well, to respond to a couple points there, first of all, under state law, there is a... Am I correct in that assumption? I believe so, Your Honor, yes. So what's interesting is under state law, if a citizen comes in and swears out a statement of charges, be it against a police officer, pursuant to statute, that before the district court commissioner can assess that statement, that application for statement of charges, the matter needs to be referred to the State's Attorney's office for investigation and a recommendation. So that is quite likely also the reason why that Police Integrity Unit exists. What I'm saying is here that it wasn't just some freelance move that M.S. Mosby made. This SAO was set up according to state law, and it was set up according to state law for a reason. That's correct. Okay. That's right. And so what they're focused on is the fact of the investigation itself only. And a State's Attorney's investigation is ordinarily imbued with arguably all three of the functions that a State's Attorney has. I mean, it's not only investigative, but it's also administrative when it comes to the allocation of resources during that. But most importantly, just generally the investigation is being orchestrated by the State's Attorney, and obviously what is going to go into that orchestration is the State's Attorney's understanding of the law and how to proceed under differing circumstances that come up during the investigation. So the investigation itself is covered just by absolute immunity, much like in Ostrensky, the case out of this particular circuit where there was a peer reviewer, and there was a general claim that the investigation and then recommendation by that peer reviewer violated the particular complainant's rights. And that general claim was found to be inadequate because the investigation and the recommendation was covered by absolute immunity. If you come back to the initial point I was making, you want to have an incentive to have independent review of allegations of police misconduct. And if you get to the point where any independent review of police misconduct or any independent investigation leads to an abrogation of prosecutorial immunity, then you're undercutting the integrity of investigations into police misconduct. That's right. I think all the reasons for absolute immunity would be on full display in that circumstance then because as the Supreme Court described in the Buckley dissent, what would ultimately happen then would be kind of this pleading rule where they would just say, wait a minute, there was an investigation, so therefore the absolute immunity falls away. And that just cannot be the case, particularly in this circumstance where the investigation is focused on police misconduct. Can I ask you a question? I just want to make sure I am sort of understanding the structure of your argument. As to the investigation, it sounds like you are arguing two things, and maybe you are arguing two things. One is that the investigation itself is covered by absolute immunity. But I thought I heard you also say that it almost doesn't matter because the constitutional claims here don't actually have anything to do with the investigation. They have to do with, one, sort of the preparation of the affidavit, which you would say is absolutely immune, and two, the decision to charge, which is also absolutely immune. But they haven't actually, the plaintiffs have not identified a particular part of the investigation that violated the rights they have to show were violated for their malicious prosecution claim. Yes, that's correct, Your Honor. So you're making both arguments, right? And that's fine. They're independent grounds on which. Yeah, and, again, it goes to the prosecutors, well, again, back to their claims. They state that the investigation, which they describe as a sham, an independent investigation led to a false narrative in the charging document. The narrative in the charging document is covered by absolute immunity because it clearly involves the exercise of the discretion as an advocate. There's no independent investigative act that they identify that actually violated their rights. And even if there was, even if there was a discrete investigative act that violated their rights, the use of the fruits of that act would still be covered by absolute immunity. To follow up on my colleague's question, they complain about certain things with respect to the prosecution. First of all, they say that there was an error of law here with respect to whether Mr. Gray's knife was unlawful and that there was a question of law here about whether they should or shouldn't have put Mr. Gray in a seat belt. And then they complained that part of a misleading narrative was that the officers observed Mr. Gray unresponsive on the floor of the wagon and the officers contend that wasn't true, that they didn't observe Mr. Gray was in any distress. And then there's further the question of whether he was responsive or non-responsive. So they complain that in this prosecution there were errors of law with respect to the seat belt, that the prosecution committed errors of law with respect to the seat belt, with respect to the legal or unlawful status of a knife, and also with respect to Mr. Gray's condition. But what I'm wondering is, aren't those questions of law often left to a judge at trial? And the questions of fact, are they not often left to a jury at trial? And to try to back all of these things up into the warrant process and have a mini-trial over a warrant affidavit seems to me to short circuit the role of the grand jury and the role of a trial judge and the role of a pettit jury. Because whether he was in distress or not is a factual question for a jury. And whether the legal status of the knife that he was carrying is a question of law for a trial court. But the prosecutor isn't expected to do all that. But the prosecutor can have its view of the evidence tested at trial. Your Honor, you know, what comes to mind with that observation is the Supreme Court's decision in Killeen v. Fletcher. Because in that case, of course, that's where the prosecutor had drafted three separate documents, one of which is something very similar here, of course, the certification of probable cause. And the prosecutor then executed the certification. The Supreme Court found that the drafting of that certification, the drafting of all the documents, including the drafting of the sworn statement, was covered by absolute immunity. Because it involved the … It was functionally related to the preparation for trial. Precisely. And it involved the decision as what facts to include and what law is the predicate for including those facts and all those things. Well, we now know that four of the cases or however many resulted in acquittal, one resulted in a mistrial. There was a grand jury indictment in all of the cases. Yes. But rather than that being a question of abrogation of immunity, isn't it rather a question of the fact that the legal system worked the way it was supposed to? Absolutely, Your Honor. I would agree with that. I mean, the one other point, I think, just to … The one other point I want to make is in the Kalina case, the Ninth Circuit, if I read the case correctly, the Ninth Circuit actually found that the drafting of the certificate was not covered by absolute immunity. The Supreme Court in Kalina went out of its way to say that even the drafting of that certification involves the prosecutor's exercise of discretion, it's covered by absolute immunity. And it must be, of course, must be related to this concern that it would require … Well, one of the things is, you know, in the real world, prosecutorial offices and police offices, they communicate. All the time. All the time. And you want them to communicate for the simple reason that the police office, the police department, does not have lawyers. And you don't want the police department to go rogue. You want the police department consulting with lawyers to make sure that they don't just go off on their own tooth and disregard the law. And so the fact that there's some interchange in consultation, it can promote the ends of law by saying, if a police unit goes to a prosecutor's office and says, is this kosher? Is this lawful? There's nothing wrong with that. What would be wrong with it if they would say, I don't give a damn, I'm going to do it anyway? In this case as well, the investigations by the police, there was an investigation by the police. It tracked along with the investigation by the state's attorney's office. The state's attorney then utilized the materials obtained by the police, including the witness statements, to come up and determine what should be in that application for statement of charges. And it was that particular conduct which should be covered by absolute immunity. Thank you. Can I ask you a question about the state immunity issue? Yes. Because I am, it's not entirely clear to me that we have jurisdiction to reach the state immunity questions in light of these more recent Maryland decisions that say those are not immediately appealable. And there's language in those decisions suggesting that that's because they're very narrowly construing sort of the substantive right to be free of standing trial. Yes. So, Your Honor, the General Assembly has expressed or directed that the statutory immunity be an immunity from suit. That's in the statute. That language is in the statute. Whether or not a decision rejecting that immunity would be subject to collateral review at the state level, I can't say with certainty. But that goes to the procedural rules. But there is language. I mean, I totally understand what you're saying, that that's not dispositive, the procedural, the way the state handles it as a matter of process. But there is language in those decisions sort of talking about the nature of the right as well. And so that's what's making this difficult for me. Right. I think the language, the collateral order doctrine at the state level is construed very narrowly. And obviously, Your Honor is aware of the language. And I think the language also that they've stated is that it can only be availed, they can only avail themselves of the collateral order rule in extraordinary circumstances. But I would submit that this would present those extraordinary circumstances, notwithstanding the general rule that they articulate in those particular opinions. But your argument would be that the better way to read these state decisions is that they really do turn on this procedural, the scope of the procedural collateral order doctrine and not the scope of the substantive right. Yes, that's right. Again, it could be that, I mean, this was a matter for the Court of Appeals to determine, of course, of Maryland to determine, of course. But it could be that an interlocutory appeal would be warranted on the state statutory immunity, if a rejection of state statutory immunity. Just one quick, I'm sorry, I know you're out of time. May I ask one quick follow-up question? Yes, sure. So assuming that we could review the state immunity issues, your understanding I believe from your brief is the same as mine, that the district court never actually ruled on the statutory immunity defense as to the defamation claim. That's correct. Okay. Thank you. Thank you. Mr. Totem. Thank you, Your Honors. If I can follow up on Judge Harris's question to counsel, I think the Dawkins opinion by the Court of Appeals makes it very clear that this court, as part of the procedural process, does not have jurisdiction or should not exercise jurisdiction over the state causes of action. In Dawkins, the Court made it very clear that collateral appeal is a very extraordinary situation and identified very What are you suggesting, that they be remanded with directions to refer them, to remand them to state court? I would hope that you'd be taking the entire case back to the district court, not just the 1983 action being removed. But if that were to happen, yes, they should be remanded back to the district court with instructions to take them to a state court. But I think Dawkins makes it very clear that there's a list of people that are specifically allowed to make a collateral appeal. They're very specific in terms of who they identify, and they certainly could have very easily identified state's attorneys in that list. They did not specifically do that. Assuming for a moment that the cases are properly read that way, that there would be no interlocutory appeal in state court. By a state's attorney and in denial of immunity. Right, right, right. But assuming all of that is true, that still doesn't dispose of the question in front of us, because we are not bound by Maryland's procedural rules like its collateral order doctrine. The question for us is the scope of the substantive right. And as your colleague said, the statute does speak in terms of a right to be free of standing trial. Sure. But as this court said in the Gray Hopkins case, the nature and scope of the claimed immunity is something that you need to look at in terms of state law and determine the parameters of what that right is. And notwithstanding the immunity from suit language, the reality is a state's attorney does not in Maryland have the right to a collateral appeal. Those are two different questions. No doubt. But I'm sorry, Your Honor. That's all right. But I believe in the context of the- Do you have any evidence that the scope of the substantive right in Maryland is not a right to be free of standing trial, other than the fact that the sort of separate but relevant fact that the collateral order doctrine in Maryland would not allow for an immediate appeal? No. I think that the court of appeals has gone ahead and defined the scope of that particular right, and significantly the legislature has done absolutely nothing since Hopkins to go ahead and say, no, no, we're going to allow state's attorneys to go ahead and do that. Well, you speak of it in terms of a state law right, but the terms of the state law right seem to borrow- the terms of the defense seem to be borrowed almost directly from New York Times v. Sullivan, which is that the comments would be privileged unless they were made with malice or reckless disregard of truth. In terms of the defamation portion? Yeah. I mean, what I'm saying is the substantive portion is that there's a right to speak on public affairs, and there would be a First Amendment interest in having an elected official speak on matters of public affairs, and that they would be free from a defamation action when they were commenting on events with a high degree of public interest, unless the comments were made with malice or with reckless disregard of truth. In other words, the defense and the immunity is technically one of state law, but it finds its roots in New York Times v. Sullivan and in the jurisprudence of the First Amendment. My colleague was going to handle the defamation portion, but I can address it in this way, in that the defamation right, the scope of the defamation right is certainly, Maryland has borrowed from the federal jurisprudence in terms of doing that. But again, the defamation itself does not give you an automatic right to a collateral appeal. The only thing that would possibly ever allow a collateral appeal in Maryland would be that you had the qualified immunity, the statutory qualified immunity. And again, the Court of Appeals has said that if you are asserting qualified immunity, then you do not have, as a state's attorney, a right to a collateral appeal, an immediate collateral appeal. In a defamation case independently, they would never have a right to a collateral appeal. And merely because the initial cause of action itself includes federal jurisprudence, there are still a number of very specific state defenses that are raised that, again, the denial of which would be under normal circumstances. We can talk about this, we can tangle ourselves up in a procedural web, but the question I have to ask you is, as a practical matter, is there not something to be said for resolving this whole case and not letting it continue to float in bits and pieces down the river? I think that there are state causes of action that do not have anything to do whatsoever with immunity issues that need to be decided by this court relative to the 1983 action, which is the original basis for the right to go ahead and have a collateral appeal in this court from the denial of the motion to dismiss on the 1983 action. And while I'm certainly sure there's always some conceptual thing of trying to get everything done, I think... It's just a practical question. Again, I think there are reasons why there are collateral appeals and there are reasons why there aren't collateral appeals allowed. And I think that relative to the state causes of action, there's no justification for going ahead and... The prosecutorial immunity is before us. Absolutely, no doubt. In 1983, absolutely. And this is another immunity question. And the one kind of thing... The kind of things that do come up on collateral appeals... This is not just any kind of state law question. This is a question of immunity. And questions of immunity, the Supreme Court has repeatedly made clear, are best decided sooner rather than later. Otherwise, you simply erode the value of the immunity. Now, I don't know why that wouldn't obtain here, because if you force someone to litigate and litigate, then the value of whatever immunity they might enjoy, whether it's derived from state or federal law or some sort of hybrid between the two, the value of the immunity is lost through a protracted litigation process. So I'm saying if it seems clear... That is another question. But if it seems clear that there is immunity, there's a lot to be said for resolving it sooner rather than later. And in fact, resolving it sooner gives effectuation to state law goals. In Dawkins, the Court of Appeals of Maryland addressed the very issues that you're raising, Your Honor, and said, notwithstanding, notwithstanding those various concerns, we are not going to allow a collateral appeal except by these specific people under very extraordinary circumstances. I know, but as Judge Harris pointed out, we're not bound by state procedural law. And the question is, do we not, in fact, reinforce the purposes of state law? Substantively, by granting the immunity if, just assuming argument, though we were clear that it existed. Because we're not bound by state procedure, and as a general matter, all sorts of immunities are given for a reason, which is to resolve the matter at an earlier rather than a later stage. Again, I think the Court of Appeals, you're not bound by the state law, but the state law certainly gives you the parameters of what, in Maryland, what that immunity means. And if there was no immunity, no freedom, I think it would be difficult for this Court to go ahead and say that someone would be allowed a collateral appeal when the substantive state law does not allow you any immunity from suit. Certainly, you have a very, very narrow right here for some people under the substantive Maryland law. And I think that does inform how this court needs to look at the jurisdictional aspect of it when it evaluates, what is this right that someone has to a collateral appeal? If I can, I want to address, if I can, switch to the issue of the absolute immunity. Not everything a prosecutor does is subject to absolute immunity. The burden, in fact, is on the prosecutor to go ahead and prove, under the functional analysis test, that they are entitled to immunity for the particular thing that they are going ahead and doing in this particular case. There's nothing, you go to Judge Wilkinson's original point, my colleague, there's nothing in the pleadings itself, right, disjuncture, that tells us that she did this as some form of institutionalized process. In fact, the allegations that we have is she elected and took upon herself to go ahead and to start and direct and carry through with an investigation. The key here, the key here is what happened. She controlled and did an investigation. She gathered information. She acted no differently than a police officer. She did not go ahead and take and go to an indictment. She gathered this information. We've been over this. This is because state law charged this Ms. Mosby with certain investigative responsibilities. That's, you know, she can't sit there and act in violation of state law. You know, I want to say one other thing here, and that is there's an awful lot of hindsight going on in this case. And you have to put yourself back in the city of Baltimore and the aftermath of the reaction to Mr. Gray's death. And there was, to put it as gently and softly as I know how, there was a grave, it was a matter of grave concern for a large number of the citizens of Baltimore. And what Ms. Mosby did, it may have been inadvisable, but it's not clear to me that inadvisability is unlawfulness. And above and beyond all that, this was an elected official who was trying to assure the citizens of Baltimore in a very tense and heated moment that the legal system could still work and that the legal system would hold police officers accountable. And for that, we're going to strip her of absolute immunity and qualified immunity and say that there is an exception, that there is no immunity if you go after police officers, not only to hold them accountable, that not only is there no immunity, but the officers are going to come after you and receive a damages award for what might have been at least borderline behavior. Now, the consequences of that and the message that it sends to abrogate immunity under circumstances where the Supreme Court, our circuit president, says we should normally grant it, the message that sends is perfectly horrible. District, can I respond to that question? Yes, you may. When a prosecutor acts as a police officer, Your Honor, and goes ahead and gathers information, including an investigation, and goes ahead and acting no differently than a police officer, provides that to another person, in this case, Major Cojan, and the information provided to Major Cojan, who is the person who is going to go ahead and submit the application for charges, when the information provided by that person, acting no differently than a police officer, is incomplete, is misleading, has factual information withheld from it, and that causes... Whether it is misleading or incomplete, the legal system has a mechanism for trying those questions, and it is not in the warrant application process. That's something that's very egregious. It is trials. It is why we have trials. It is why we have juries. It is why we have grand juries. It is why we have trial judges, because they are going to arrive at a lot more dependable verdict and conclusion than litigating it in the context that you want us to make these decisions on. May I respond? Well, you may respond briefly, but this is... The answer is the judicial system is the ultimate innocence, finding of innocence, by the defendant. It doesn't matter, because at the end of the day, we've got to look. We want the system to have police officers and information provided to commissioners who are seeking arrest warrants to be accurate, to be complete, not misleading, and we want to go ahead and ensure that, in this context, that we have not a wrong decision made because the commissioner is properly and fully informed. Otherwise, there would be no reason for having any causes of action ever against any police officer who lies in a warrant to a commissioner. Thank you, Your Honor. Thank you, Mr. Starr. Ms. Peebles. Good morning, Your Honors. In terms of the defamation and the state law claims, I want to point out, I think, one thing. My colleague has addressed the jurisdictional issues, but I want to point out at least with respect to defamation and the state law immunity claims that these are actually claims that provide for liability from immunity, or immunity from liability rather than immunity from lawsuits. The distinction and two points that I really want to hit on with regard to these state law claims are, one, gross negligence as it relates to the state law immunity claims, and, two, reckless disregard as it relates to the defamation claims. What I really wanted to talk about with the Court today, specifically under the Smith v. Danielcheck case, which is 928A2-795, that case really discusses the concepts of privilege and immunity inasmuch as the state statutes rely on immunity from liability. It's our intention. I don't understand what exactly where the malice or the gross negligence is, because I thought that there was a, that Mosby recited verbatim the contents of the criminal charging documents and the resulting charges against the plaintiff, and actually at the conference advised the public of the presumption of innocence, and then talked about, made some general statements regarding the judicial process and the underlying investigation, and then stressed the need for peace in the city of Baltimore. I mean, that was the gist of the press conference. That's correct, Your Honor, and Attorney General, or State's Attorney Marilyn Mosby, relies on the fair reporting privilege when she does that, but the key to this case is the fact that under the self-reporting privilege, she can't then create false statements, materially omit evidence. I'm asking you where the malice or the gross negligence was, because what you have here is you have an elected official trying to explain her actions, and an elected official has to be given some latitude in doing that, because that's what democracy is all about. We explain to the public why officials are doing what they are doing, and very skittish about allowing defamation claims against someone who said what she said and was trying to explain a public action and the reasons for doing what she was doing. Now, if she's off base, you know, then she can face the electoral consequences, but you have to have some communication between citizens and their elected officials, and that's what this woman was trying to provide. I'm not into the question of whether it was inadvisable. It may have been inadvisable, but the consequences of holding something like this as being unlawful, it really puts a damper on communications that are part of what democracy is all about. But I think what you're raising, Your Honor, is a question of fact that really needs to be decided by the court and not be decided at this pleading juncture. I think appellees, the police officers, have given multiple reasons as to why the statements alleged in both the application for statement of charges, which she had a fundamental part in writing, and, two, the press conference, could be construed as defamatory, and that's not for this court to decide until a fact finder is active. Whether they were misleading or not, it seems to me that that is in the first instance to be decided at trial, and in the second instance it's to be decided under the rubric of malice or gross negligence. And I don't understand how reciting the content, you may disagree with some of those statements and you keep calling them misleading, but that's what trials are all about, to find out whether something is misleading or truthful, and you sort of abrogate the function of a trial. And that's correct, Your Honor. In terms of looking at just the gross negligence standard, it depends on the facts of each case. You and I can sit here as reasonable minds and disagree as to what those statements meant or what the intentions of those statements were to achieve or why Ms. Mosby made those statements or whether those statements were predicated on false or misleading information. But when there is a difference as to whether we conclude is up to a fact finder, not based on pleading standards. Obviously, opposing counsel and us are going to disagree as to the intent of those statements. I think compounding is an ordinary negligence standard, if that, and what you're saying is that any time any defendant in a criminal case disagrees with any statement made by a prosecutor, that there's a Section 1983 action. And, you know, that covers a waterfront of claims. And it can't be that every time a criminal defendant disagrees with some statement that's made in a press conference, whether it's in reciting the contents of a charging document or whatever, that there's a defamation claim absent malice of gross negligence. You're just saying that mere disagreement on the part of two parties over a statement made in a press conference is going to give rise to a defamation claim when the discussion is on a matter of the highest public moment. That can't be the law. The distinction here, though, Your Honor, is whether the prosecutor at the time made those statements in such reckless disregard that they actually constituted defamation. And because she had, you have a conditional privilege and you have a fair reporting privilege, and defamation encompasses these things. When she asserts the privilege, it then becomes a question of fact as to whether she abused those privileges to be immune from a suit of defamation. And we have contended that, number one, based upon the facts of the case and the facts that she rendered into the application for statement of charges and how she characterized the press conference in making the statements that she made, the whole theme goes back to whether it's a reckless disregard. And that ultimately, Your Honor, is a jury question. I mean, we've pled sufficient facts to at least get over that hurdle at this point. Maryland case law is clear that when there's an abuse of privilege, as we contend is happening here, that's left to the fact finder. I mean, discovery hasn't even happened in this case yet. But at least, based on the factual allegations in the complaint, we have alleged enough to get over that hurdle. It's not a pleading standard, Your Honor. It's a factual standard. Counsel, you said something that was sort of piqued my interest. You said the facts of the case. But if you, from a prosecutor's standpoint, if you then diagram that the facts, the facts, and the facts of the case are different, aren't they? Perhaps all the facts of the case may be inside of the circle of facts, but the facts are bigger than the facts of the case. Because it seemed to you suggested that if she said anything that went outside of the facts of the case at trial, then she's subject to misleading and that kind of thing. For example, a prosecutor says, absolutely, we have the right man. We know this person is the only person who could have done this. So if you go to trial and the facts of the case turns out that there's another person that did this, that means that the prosecutor is misleading, is subject to suit? I think you're hitting on a nuance, Your Honor, and that is the gross negligence or the reckless disregard. What you're suggesting would open up any prosecutor to be charged with defamation based on the fact that somebody said something and the outcome of the case was such that it ended in a way that the prosecutor didn't anticipate. What we're talking about here is that... have publicly expressed grounds for prosecuting police officers. And that's what you're talking about here. You're talking about sending a signal that if a prosecutor gets up and says there's a case against these police officers and there's the slightest disagreement with them, that they're going to be slugged with a 1983 suit on the civil side and they're going to lose their absolute immunity. They're going to lose qualified immunity. They're going to lose privileges under state law. And it's all going to be done in situations where we would normally rule otherwise, but where we are driven by the fact that this is a prosecution of police officers and we're going to create a separate rule for them. And I bend over backwards because I realize that police officers have a hard job and when they're in danger or whatever, I bend over backwards to protect them under qualified immunity that the Supreme Court has handed down. But Mr. Gray posed no danger to anyone. He didn't pose a danger to these officers. He was in the back of a van. And obviously the citizens of Baltimore were concerned. And if we take this case and create on the defamation front or create on the abrogation of immunity front a special rule, it is bad business. I agree, Your Honor. I agree with everything you're saying, but I think that this case is a nuance and this case is a distinction because the theme of this case is reckless disregard. Not every prosecutor should be, you know, questioned on what the prosecutor does between initiating an investigation and getting to trial. And if that trial doesn't turn out the way the prosecutor would prefer or the way the public prefers is one thing. But in this case you have an overwhelming theme of reckless disregard. But, counsel, the problem is that that will always be the overwhelming theme because you're sort of asking us to adopt a pleading rule where if you write a complaint that says reckless disregard and make it the theme, then this sort of set of special exceptions would apply. And it just seems that that would open quite a wide door. I still think it's a high standard, Your Honor. I think that at least with the pleading argument rather than a factual argument, which is to be determined at trial by the fact finder, to allege sufficient facts to demonstrate either gross negligence and in this case malice by reckless disregard gets you over that hurdle. So you're putting a lot of weight on this idea that the allegations in the complaint have to be plausible and be the Iqbal standard. Like it's not enough, you think, just to say reckless disregard. I think the facts of the case and the pleadings in this case fully demonstrate that a reasonable fact finder could determine that reckless disregard happened with the fact that there were material misrepresentations made to Major Kogan, that there were material omissions made to Major Kogan, and that this is a case, this isn't just a case of a prosecutor. Let me just, I know you're out. May I ask one last question just about what you just said? For your defamation claim to work, it almost sounds like we also have to think your Franks claim works, that the defamation claim kind of piggybacks on the idea that, well, the fact that she just read the charges is no defense because the charges, the charging document itself was deficient under Franks. Is that right? That's correct. So if I think just hypothetically that the charging document was absolutely fine under Franks, then the defamation claim goes away? No, Your Honor, because if you look at the application, the charging document on its face may have been okay, but when you look at the fact that what went into the charging document. If I think that there is no Franks violation, having looked at everything that went into it, your entire Franks argument, if I look at all of that and think there is absolutely nothing wrong with this application for a warrant, it seems to me at that point, that because the prosecutor only stands up and reads what's in the charging document, the defamation claim goes away. Based upon the facts of this case, I would agree with your contention. Thank you, counsel. Your Honors, I just want to point out one procedural issue that came up. Counsel seems to be conflating state absolute prosecutorial immunity and state statutory immunity, the appealability of those particular matters in a collateral review context. They're different, of course, and as it relates to absolute immunity, which would apply, of course, to the Article 27 in the malicious prosecution claims, no court has directly addressed it at the state level, but the appellate courts have dealt with one appeal by a prosecutor on an interlocutory basis. There's that. Then state statutory immunity is just different. Again, whether it's subject to collateral review under state law is subject to the procedural rules of the court. What I really want to get to, though, is the defamation claims here are fundamentally a collateral attack on the charging decision, as I believe the court has indicated. There's no question that in order to make an assessment of the defamation claims, as articulated here, this court has to get into what was in the charging document and whether what was in the charging document was in the charging document. So as Judge Harris pointed out, it's part and parcel of the same inquiry, really. Because it's a collateral attack on the charging decision, I think it's absolutely incumbent. I understand that the court's pen and appellate jurisdiction is a narrow doctrine, but I think it's absolutely incumbent on the court to resolve this case in its entirety. I think all matters should be resolved and nothing should be left in the wind. And, again, because the fundamental premise is these are just different ways. The plaintiffs have simply articulated different bases to attack the same thing, and that is the absolutely immune charging decision. What is fundamentally at stake here, we have all these different theories, but what is fundamentally their complaint is that they were prosecuted at all. I agree. It could have been a picture-perfect prosecution or whatever, and they would have found a problem with the warrant or a problem with the press conference or a problem with the indictment. But they don't like the fact that they were prosecuted, which brings us into the heart of Embler-Packman. And they don't like the fact that she held a press conference and said what she said. It isn't this or that particular. They didn't want to be prosecuted, and they didn't want their actions subject to sunshine and public sunshine. They want to push it back into the shadows, where prosecutors can no longer come forward and shout at them. They want to shine the public light of transparency upon police actions that may be ultra-virus. And it's not a question of this particular or that particular. They just don't like what happened. You said it all, Your Honor. I have nothing further to add to that. I agree 100%. And for that reason, we ask that you reverse the decision in its entirety. Unless the panel has additional questions. I'll submit. There are none. Thank you, counsel. Thank you. We'll come back with counsel to speak to the next case.
judges: Roger L. Gregory, J. Harvie Wilkinson III, Pamela A. Harris